IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOLLGRADE COMMUNICATIONS, INC., | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 05-1239 Judge McVerry |
| CAPELLA TELECOMMUNICATIONS, INC., | ) ) ) | Magistrate Judge Mitchell |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

I.  Recommendation

It is respectfully recommended that the motion to dismiss defendant's counterclaims and motion to strike submitted on behalf of Plaintiff (Docket No. 11) be granted with respect to defendant's counterclaims for negligent and fraudulent inducement and denied in all other respects.

I.  Report

Plaintiff, Tollgrade Communications, Inc. ("Tollgrade"), brings this action against Defendant, Capella Telecommunications, Inc. ("Capella"), alleging that Capella breached a distributor agreement. Capella has filed a counterclaim, alleging that Tollgrade breached the agreement and either fraudulently or negligently induced Capella to enter the agreement.

Presently before this Court for disposition is a motion to dismiss submitted by Plaintiff, seeking dismissal of Defendant's counterclaims. In the alternative, Plaintiff requests that the Court strike the consequential damages requested in Defendant's counterclaims because of a limitation of liability clause in the contract. For the reasons that follow, the motion should be

granted with respect to defendant's counterclaims for negligent and fraudulent inducement and denied in all other respects.

Plaintiff's Allegations

Tollgrade and Capella entered into a distributor agreement (the "Agreement") on or about October 27, 2004, pursuant to which Tollgrade granted Capella an exclusive license to distribute in Canada certain Tollgrade products expressly identified in the Agreement. (Compl. ¶ 5 & Ex. 1, § 2.) Pursuant to Section 3.2 of the Agreement, on or about November 10, 2004, Capella purchased and Tollgrade delivered to Capella certain demonstration hardware and software identified on Exhibit B to the Agreement as "CheetahIP" (the "CheetahIP Products"). In addition, Capella agreed to purchase annual software maintenance services for the demonstration products ("Annual Maintenance and Support"). The total price for the CheetahIP Products and the associated Annual Maintenance and Support was $133,143.59. (Compl. ¶ 6, Ex. 1 § 3.2, Ex. 2.)

Capella issued a purchase order and Tollgrade invoiced Capella for the CheetahIP Products on or about November 10, 2004. Payment of the purchase price, freight and other costs totaling $113,793.59 was due within thirty days thereafter. (Compl. ¶ 7 & Ex. 3.) Capella issued a purchase order and Tollgrade invoiced Capella for the Annual Maintenance and Support on March 25, 2005 in the amount of $19,350.00, with payment being due within thirty days. (Compl. ¶ 8 & Ex. 4.)

Pursuant to the terms of Section 3.2 of the Agreement, Capella also agreed to purchase demonstration hardware and software identified on Exhibit B of the Agreement as "Cheetah DOCSIS" (the "Cheetah DOCSIS Products"). Plaintiff alleges that Capella has failed to

purchase the Cheetah DOCSIS Products and the associated Annual Maintenance and Support in the amount of $28,084.00.  (Compl. ¶ 9.)  Plaintiff alleges that it has satisfied all of its obligations under the Agreement, but that, despite its repeated demands to Capella for payment, Capella has breached the Agreement by failing and refusing to pay for any portion of the Cheetah IP Products, failing to purchase the Cheetah DOCSIS Products and failing to pay for and/or purchase Annual Maintenance and Support associated with the Cheetah IP Products and the Cheetah DOCSIS Products.  (Compl. ¶¶ 10-11.)

   Defendant's Allegations

   Capella alleges that, prior to execution of the Agreement, Tollgrade represented that the CheetahIP products were the only cable products available in Canada containing certain software manufactured by Brix, and that this representation was the principal inducement for Capella to enter the Agreement.  Capella indicates that, absent this inducement, it would not have entered into the Agreement and would not have placed an order for the CheetahIP products.  It further states that, "[a]s a result of Tollgrade's representations, Capella reasonably believed that by executing the Agreement it had secured the exclusive right to distribute cable products containing the Brix software in Canada."  (Answer ¶ 12.)

   Capella alleges that Tollgrade's representations were false and that it learned from a prospective customer that a competitor of Tollgrade's was also selling cable products in Canada which contained Brix software.  Capella alleges that Tollgrade knew or should have known that its cable products were not the only cable products which contained Brix software and that it could not grant Capella the exclusive right to distribute products containing Brix software in Canada.  In the alternative, Capella alleges that Tollgrade failed to take the steps necessary to

secure and/or confirm the exclusive right of Capella, as Tollgrade's distributor, to sell products containing the Brix software. (Answer ¶ 14.) Capella states that it confronted Tollgrade with the fact that a competitor's product also contained Brix software, but that Tollgrade was unable or unwilling to provide an explanation. (Answer ¶ 15.) It further states that it returned the demonstration hardware and software but that Tollgrade refused to accept it. (Answer ¶ 16.)

Procedural History

Plaintiff filed this action on September 6, 2005. Jurisdiction is based on diversity of citizenship, in that Plaintiff is a Pennsylvania corporation with its principal place of business in Cheswick, Pennsylvania; Defendant is an Ontario, Canada corporation with its principal place of business in Peterborough, Ontario, Canada; and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs. (Compl. ¶¶ 1-3.) The complaint alleges that Capella has breached the Agreement by failing and refusing to pay for any portion of the CheetahIP Products, failing to purchase the Cheetah DOCSIS Products and failing to pay for and/or purchase Annual Maintenance and Support associated with the Cheetah IP Products and the Cheetah DOCSIS Products.

On November 29, 2005, Capella filed an answer with affirmative defenses and a counterclaim. (Docket No. 7.) In its counterclaim, Capella alleges that Tollgrade's actions breached the Agreement by failing to grant it the exclusive right to distribute Brix software in Canada and that Tollgrade either fraudulently or negligently induced Capella to enter into the Agreement by making representations that proved to be false. It seeks damages for these claims in an amount in excess of $200,000.00, which represents its out-of-pocket expenses incurred in promoting the CheetahIP Products, the cost of training its sales staff and lost profits on at least

two sales that it would have consummated had it been the exclusive supplier of cable products containing Brix software.

On December 19, 2005, Tollgrade filed a motion seeking to dismiss Capella's counterclaims or to have stricken from the counterclaims Capella's request for consequential damages. The motion to dismiss argues that: 1) Capella cannot state a claim for either fraudulent or negligent inducement because of the parol evidence rule and the gist of the action doctrine; 2) Capella cannot state a claim for breach of contract because it has not identified a contractual provision that Tollgrade breached as the Agreement clearly and unambiguously did not represent that Tollgrade was making Capella the exclusive distributor of Brix software products in Canada. In the alternative, if the motion to dismiss is denied, Tollgrade requests that the Court strike Capella's claims for consequential damages pursuant to Rule 12(f) as barred by the limitation of liability clause in the Agreement.

Standard of Review

A motion to dismiss under Rule 12(b)(6) must be viewed in the light most favorable to plaintiff and all well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). See also National Org. for Women, Inc. v. Scheidler, 510 U.S. 249 (1994). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Williams, 490 U.S. at 323; Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The Court of Appeals has stated that:

> To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.... [In addition,] a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.

Pension Benefit Guaranty Corp. v. White Consolidated Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Thus, the Agreement, which is attached to the Complaint, may be considered without converting the motion into a motion for summary judgment.

Breach of Contract Claim

The Pennsylvania Supreme Court has stated that:

> In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004) (citations omitted). Thus, the first issue is whether the contract is ambiguous, which is a question of law to be determined by the court. Id. at 1164 n.5. See also Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc., 198 F.3d 415, 421 (3d Cir. 1999).

The Agreement appoints Capella as the "exclusive distributor of the Products in the Territory for so long as this Agreement is in effect." (Compl. Ex. 1 § 2.1(a).) The Agreement defines "the Products" as "the Hardware and Software products of Tollgrade that are specifically identified on Exhibit A attached hereto and made a part hereof, and any other products which

6

may be added to Exhibit A by the mutual agreement of the parties." (Id. § 1.13.) "Software" is defined as:

> (a) one (1) copy of all software in machine executable form contained within the Products which will guide the functioning of their components, including any third party software licensed by Tollgrade; (b) one (1) installation and operation manual; and (c) the non-exclusive right and license to use the Software for one (1) server application within each End User location. "Software" as used herein does not include any Source Code (as defined herein).

(Id. § 1.16.) The "Territory" is defined as the country of Canada. (Id. § 1.19.) The Agreement further states that:

> ... Tollgrade hereby grants, and [Capella] hereby accepts, an exclusive, non-transferable license, subject to the terms and conditions of this Agreement, to promote, market, distribute and sublicense Products to End Users in the Territory. Notwithstanding the foregoing, it is specifically acknowledged and agreed that: (i) any Source Code contained in the Software is not included in the license granted herein; and (ii) Tollgrade shall be free to market and sell the Products itself in the Territory and/or to license, give or sell to third parties located outside the Territory the rights to market, sell or use the Products....

(Id. § 2.1(b).)

Capella contends that, by including "third party software licensed by Tollgrade" in the definition of "Software," the Agreement was granting Capella an exclusive distributorship for Brix software in Canada. Tollgrade responds that the Agreement does not state that Tollgrade had exclusive rights in the third party software that it was giving Capella as part of the Agreement. Rather, Tollgrade argues that it was granting Capella the right to be the exclusive distributor in Canada of the hardware and software products *of Tollgrade* and the right to distribute third party software licensed by Tollgrade (such as the Brix software). With respect to Brix software, Tollgrade's use of the word "exclusive" meant that it was not giving distributorships to any other company, not that no other entity had the right to distribute Brix

software in Canada.

The Court of Appeals has noted that:

> To determine whether ambiguity exists in a contract, the court may consider "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980).... Furthermore, the alternative meaning that a party seeks to ascribe to the specific term in the contract must be reasonable; courts must resist twisting the language of the contract beyond recognition.

Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93 (3d Cir. 2001) (other citations omitted).  The case was decided after a trial had been conducted.

The Agreement is reasonably susceptible of both of the alternative constructions.  Although Tollgrade could not have granted Capella more rights in third party software than it had itself, the Agreement does not provide enough information to tell whether Tollgrade had the exclusive license to sell Brix software in Canada.  Moreover, the nature of the objective evidence to be offered in support of Capella's meaning cannot be determined at this stage of the proceedings.  Thus, the Agreement is ambiguous and parol evidence may be submitted to explain or clarify the ambiguity.  Therefore, with respect to Capella's breach of contract claim, the motion to dismiss should be denied.

### The Gist of the Action Doctrine

Under the gist of the action doctrine, "a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts.'"  Bohler-Uddeholm, 247 F.3d at 104 (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 830 (Pa. Super. 1992)).  Tollgrade and Capella are parties to a contract and their obligations are defined by the Agreement, not the larger social policies embodied in the

law of torts. Thus, Capella's tort claims for negligent and fraudulent inducement should be dismissed.

### Motion to Strike Consequential Damages Request

In the alternative, Tollgrade moves pursuant to Rule 12(f) to have stricken Capella's request for consequential damages in its counterclaims. It relies upon a section of the Agreement which states that:

> IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR SPECIAL, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, WHETHER ARISING FROM OR BASED UPON BREACH OF WARRANTY, BREACH OF CONTRACT, TORT, INCLUDING NEGLIGENCE, INDEMNITY OR ANY OTHER BASIS WHATSOEVER.

(Compl. Ex. 1 § 10.1.)

The Court of Appeals has stated that

> limitation of liability clauses are not disfavored under Pennsylvania law; especially when contained in contracts between informed business entities dealing at arm's length, and there has been no injury to person or property. Furthermore, such clauses are not subjected to the same stringent standards applied to exculpatory and indemnity clauses. Limitation of liability clauses are a way of allocating "unknown or undeterminable risks," K & C, Inc. v. Westinghouse Elec. Corp., 437 Pa. 303, 263 A.2d 390, 393 (1970), and are a fact of everyday business and commercial life. So long as the limitation which is established is reasonable and not so drastic as to remove the incentive to perform with due care, Pennsylvania courts uphold the limitation.

Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 204 (3d Cir. 1995) (other citations omitted).

Capella responds that it is premature to determine whether its damages request falls within the limitation of liability clause in the Agreement. Capella does not dispute the existence or enforceability of the limitation of liability clause. However, it contends that its requested damages flow directly from Tollgrade's breach of the Agreement. It notes that the Agreement required Capella to "use its best efforts to promote" Tollgrade's products (Compl. Ex. 1 § 3.1);

9

that it had to "maintain an adequate inventory of ... sales material samples and ... use [them] ... to promote the sale" of Tollgrade's products (id. § 3.5); that it had to "conduct[] ... customer demonstrations, field trials and evaluations" of the products (id. § 3.7); and that it had to "comply, and [to] cause its employees and agents to comply, with all sales policies established by Tollgrade" (id. § 3.6).  It contends that Tollgrade's breach of the Agreement made its efforts to comply with these provisions a nullity and therefore its damages flow from the breach.  It also argues that the issue of whether damages are direct or consequential is an issue of fact to be determined at trial.  Penn City Inv., Inc. v. Soltech, Inc., 2003 WL 22844210, at *10 n.10 (E.D. Pa. Nov. 25, 2003).

      Rule 12(f) allows the court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "While courts possess considerable discretion in weighing Rule 12(f) motions, such motions are not favored and will generally be denied unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party."  Miller v. Group Voyagers, Inc., 912 F. Supp. 164, 168 (E.D. Pa. 1996) (citations omitted).  See also Lakits v. York, 258 F. Supp. 2d 401, 409 (E.D. Pa. 2003).

      Tollgrade has not identified any prejudice that would result from allowing Capella's damage request to remain in the counterclaim at this stage of the proceedings.  The Court need not resolve at this time the issue of whether Capella's damages request is barred by the limitation of liability clause.  Therefore, the motion to strike should be denied without prejudice.

      For these reasons, it is recommended that the motion to dismiss defendant's counterclaims submitted on behalf of Plaintiff (Docket No. 11) be granted with respect to

defendant's counterclaims for negligent and fraudulent inducement and denied in all other respects.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                Respectfully submitted,

                s/Robert C. Mitchell
                ROBERT C. MITCHELL
                United States Magistrate Judge

Dated: February 21, 2006